SCALLY ET AL. *v.* WARDLAW ET AL.

[86 South. 625, No. 21229.]

1. WILLS. *Capacity relates to time of execution; temporary insanity not presumed to continue to execution of will.*

The mental capacity of the testatrix is to be tested as of the date of the execution of the will, and temporary or intermittent insanity or mental incapacity does not raise a presumption that it continued to the date of the execution of the will.

2. WILLS. *Unnatural or unreasonable provisions not sufficient to show incapacity, but may be considered with other evidence.*

Unnatural or unreasonable provisions of the will standing alone,

will not support a finding of testamentary incapacity, but in passing upon the question of testamentary capacity, the unreasonableness or unnaturalness of the will is one of the elements to be considered by the jury in connection with all the other evidence in the case.

3. WILLS.  *Where evidence will not support a finding of incapacity, peremptory instruction for proponents proper.*

When all the circumstances surrounding the execution of the will indicate a sound mind at the date of the execution thereof, and the evidence offered on behalf of contestants is insufficient to support a finding of testamentary incapacity, a peremptory instruction should be granted proponents upon the issue of testamentary capacity.

4. TRIAL.  *Instruction assuming that provision of will is unreasonable and unnatural is erroneous.*

Upon an issue *devisavit vel non*, an instruction for contestants, which assumes that the will is unreasonable and unnatural, and which authorizes the jury to consider the unnaturalness and unreasonableness of the will, without qualification or limitation, is erroneous. *King* v. *Rowan*, 82 Miss, 1, 34 So. 325.

5. WILLS.  *Instruction on "undue influence," omitting element of destruction of free agency, is erroneous.*

Upon an issue *devisavit vel non*, an instruction defining as undue influence that "influence which one person exercises over another, whether it be obtained by flattery, cajolery, threats, persuasion, deception, or any other means which may be used to influence and control another person," and which omits the qualification or limitation that the influence must be such as to destroy free agency, is erroneous.

6. EVIDENCE.  *Opinion evidence that testatrix was under influence of a legatee is inadmissible.*

Opinions of witnesses that the testatrix was under the influence and control of a legatee in disposing of her property are inadmissible.

APPEAL from chancery court of Alcorn county.

HON. A. J. McINTYRE, Chancellor.

Suit by Mrs. Elizabeth Wardlaw and others against Frank Scally and others, proponents, to contest the validity of the will of Mrs. Catherine Leslie, deceased. Verdict for contestants on an issue *devisavit vel non*, and from the decree entered thereon, proponents appeal. Reversed and remanded.

*Thomas H. Johnson* and *Ely B. Mitchell,* for appellants.

In the trial of this case the proponents offered in evidence the will in controversy and the complete record of the proceedings probating the will in common form and rested, thus making out a *prima-facie* cause under the statute that at the time of the execution of the will the testatrix was possessed of testamentary capacity and that she was not unduly influenced to make the will. Hemingway's Code, sec. 1164; *Sheehan* v. *Kearney,* 21 So. 41; *Dedington* v. *Mabry,* 7 So. 801.

While it is true, as was said in the case of *Sheehan* v. *Kearney,* the burden of proof, properly understood, is upon the proponents throughout as to both the issue of testamentary capacity and undue influence but when a *prima-facie* case has been made under the statute it is incumbent upon the contestants to meet and overcome the *prima-facie* case by competent proof, or as Prof. Wigmore phrases it, while the burden of proof does not shift, the risk of nonpersuasion does, and it was incumbent upon the contestants to meet this risk of nonpersuasion.

It may be contended by appellees that proof of mental incapacity before the making of the will raises the presumption that such mental incapacity continued to the date of its execution but, it will be noted that not a single one of these witnesses testified to any chronic state of insanity, or permanent mental incapacity; they say that, in their opinion, Mrs. Leslie was not of sound mind at times, part of the time, was a little flighty at times, etc. Granting, for the sake of argument, that the instance detailed by the witnesses, and on which they base their opinions are really of probative value; that the instances recited really are evidences of mental unsoundness, unless it were further shown that such condition as they testified to was permanent, habitual, or chronic, it would not raise a presumption of its continuity, it would raise no presumption that on the day the will was executed Mrs. Leslie was lacking in testamentary capacity.

But these witnesses themselves state that such condition was only temporary. Alexander on Wills, par. 333. (Note 27); *In re Murphy's Estate*, Ann. Cas. 1912C; *Chandler v. Barrett*, 99 Am. Dec. 706 (La.); *Lum v. Lasch*, 93 Miss. 81, 46 So. 550.

It was contended in the lower court by the appellees that the will was unnatural and unreasonable, in that it left her collateral relatives out altogether, and that this was evidence of insanity. That these collateral relatives were the natural objects of her bounty, and that because they were left out, the will on its face is unnatural and unreasonable. These relatives may, or they may not have been the natural objects of Mrs. Leslie's bounty; it depends altogether upon all the facts and circumstances in evidence in the case. It is true that they were her heirs at law, and would have been entitled to her property had she died intestate, but it does not necessarily follow that they were the natural objects of her bounty. *Breadheft v. Cleveland*, 108 N. E. 5, 110 N. E. 662; Alexander on Wills, par. 355; *Lum v. Lasch*, 93 Miss. 81; *Leach v. Burr*, 188 U. S. 501.

We contend in the first place, that the evidence of the contestants was not sufficient to meet the *prima-facie* case made by the proponents; second that it having been clearly shown that the testatrix possessed testamentary capacity at the time the will was executed and no evidence having been adduced to the contrary, that it is immaterial that the proof shows, which we deny, that before, or after that time, her mind was slightly impaired at times; and third, that the proof for the proponents is absolutely overwhelming that Mrs. Leslie was a woman of sound and disposing mind, memory and understanding. That for any one, or all of said reasons, the court should have granted the peremptory instruction, withdrawing from the jury the question of testamentary capacity.

The second assignment of error was taken to the action of the court in refusing to grant the general peremptory charge, marked requested by the proponents. In view of

the fact that this, assignment of error covers both the questions of withdrawing from the consideration of the jury the issue of testamentary capacity as well as the issue of undue influence, we shall confine our discussion under this assignment solely to the question of undue influence as we have already discussed what we deem error of the court in refusing a peremptory charge on the question of testamentary capacity.

It might not be out of place at this time to review some of the decisions on this subject, and note what the different courts have to say as to what constitutes and what does not constitute undue influence.

The word undue, when used to qualify influence, has the legal meaning of wrongful; hence undue influence means a wrongful influence. *Sears* v. *Vaughn,* 82 N. E. 881 (Ill.) ; *Caughety* v. *Bridenbaugh,* 57 Alt. 921 (Pa.) ; *Burnett* v. *Smith,* 93 Miss. 566, 47 So. 11 /-118; 2 Alexander on Wills, at the bottom of page 871; 2 Alexander on Wills, 874; *Estes* v. *Montgomery,* 9 So. 311 (Ala.) ; Estate of Carey, Ann. Cas. 1915B. 956 (Cal.) ; *Trost* v. *Dinglar,* 4 Am. St. Rep. 593 (Pa.) ; *Weber* v. *Stroeble,* 139 S. W. 188 (Mo.) ; *Gavit* v. *Moulton,* 96 N. W. 395-399 (Wis.) ; *Muller* v. *Johnson,* 47 S. O. 484-487 (Ala.) ; *Dowie* v. *Sutton,* 118 Am. St. Rep. 226 (Ill.) ; *Waters* v. *Waters,* 113 Am. St. Rep. 366 (Ill.).

We contend that the evidence introduced by the contestants to meet the *prima-facie* case made by the proponents on this issue falls far short of showing any undue influence such as the law condemns, and does not measure up to the standard set in the cases above cited.

PRIMA-FACIE CASE MADE FOR PROPONENTS ON ISSUE OF

UNDUE INFLUENCE.

It is true in the trial of the issue *devisavit vel non,* that the burden of proof, properly understood, is upon the proponents throughout not only as to the question of testamentary capacity but also on the question of undue influence; but when the proponents made out their *prima-*

*facie* case, it was incumbent upon the contestants, before they are entitled to prevail on the issue of undue influence, to overcome the case so made by competent proof. *Scheehan* v. *Kearney,* 21 So. 45 (middle 2nd. col.) ; 2 Alexander on Wills, page 895; *In re Hess's Will,* 31 Am. St. Rep. 666 (Minn.) ; 2 Alexander on Wills, page 911; See *Trost* v. *Dinglar,* 4 Am. St. Rep. 593 (Pa.) ; 2 Alexander on Wills, pages 873, 920; *Goodbar* v. *Lidikey,* 43 Am. St. Rep. 30 (Ind.), 107 Am. St. Rep. 465 (Note Div.) Ann. Cas. 1917D, 717 (Note) ; *Bush* v. *Lisle,* 89 Ky. 393; *White* v. *Starr,* 47 N. J. Eq. 244; *Caughey* v. *Bridenaugh,* 57 Alt. 828.

It was contended in the lower court by the contestants that the relationship which was shown to have existed between the testatrix and the Scallys was such a confidential relationship from which the law will presume undue influence, and in fact, they asked for and were granted instructions Nos. 7 and 8, embodying this erroneous conception of the law, which we shall discuss further under another assignment.

The court below and the contestants seemed to have been misled by the expression, "confidential relationship" found in many of the authorities, and gave the expression its ordinary "lay" meaning. According to our conception of the law the terms confidential relationship, and fiduciary relationship, are synonymous. Bouvier defines the word fiduciary, as in trust, in confidence.

Under the law, a fiduciary relationship is such relationship as exists between attorney and client, guardian and ward, trustee and the beneficiary under the trust, as physician and patient, etc. The latest expression of the courts in defining this relationship from which the inference of undue influence may be drawn, is from the supreme court of Illinois in the case of *Abbott* v. *Church,* 4 L. R. A. 975, in which it said: "Any relationship, existing between the parties to a transaction wherein one of the parties is in duty bound to use the utmost good faith for the benefit of the other is a confidential, or fiducial relationship."

No such relationship as above defined, is shown to have existed between the testatrix and the Scallys; the confidence which she reposed in them was simply such confidence as one has in a neighbor who has proved his worth by long and intimate friendship. _Goodbar_ v. _Lidikey,_ 43 Am. St. Rep., beginning at the bottom of page 299; _Bancroft_ v. _Otis,_ 24 Am. St. Rep. 904; _Moore_ v. _Spier,_ 80 Ala. 129.

We contend that the evidence for the contestants was not sufficient to show any undue influence exercised by the Scallys, or any one for them, to procure the making of the will, and for this reason the court erred in refusing to grant the peremptory charge.

The error here complained of is predicated upon the action of the court, in refusing for the proponents, the instruction marked "c" which in effect, tells the jury that argument, persuasion, entreaty, and the like do not constitute undue influence unless it were, so persistent and importunate as to overthrow and overwhelm the will of the testatrix and substitute another's will for her own. While there was no direct evidence to show that any of these methods had been used in trying to influence the testatrix, nor, as we contend, any facts or circumstances from which it might be inferred, in the face of instructions Nos. 10, 11 and 16, given for the contestants, such charge was proper.

As to whether or not undue influence can be predicated upon kindness and friendly attention, see the authorities cited under the second assignment of error, and also the following: _Luebert_ v. _Brockmeyer,_ 138 S. W. 92 (Mo.); _In re Darst's Will,_ 54 Pac. 947 (Ore.).

The next instruction complained of is No. 5 in which the jury is told that a will that is partial and unjust, unreasonable and unnatural in its provisions under the law is looked upon with suspicion, and they should take these facts into consideration in determining whether the testatrix was unduly influenced to make the will, if they believe such facts to exist.

The giving of such instruction as this was held fatal error in the case of *King* v. *Rowan,* 34 So. 237. That instruction correctly states the law; there is no evidence on which the two instructions complained of can be based.

In instruction No. 10 the court told the jury, at the instance of the contestants, that the law] condemns as undue influence, that influence which one exercises over another whether it be obtained by flattery, cajolery, threats, persuasion, deception, or any other means which may be used to influence and control another person, and is sufficient to set aside a will.

This is clearly not the law; one may gain an influence and control over another by flattery, cajolery, persuasion, entreaty, or in numberless other ways and by other means, and yet such influence is not undue and the law does not condemn it as such, and it is not sufficient to set aside a will on the ground of undue influence, unless such flattery, cajolery, entreaty, or the like, are so persistent and importunate, or otherwise so operate, as to subdue and subordinate the will and take away free agency. *Burnett* v. *Smith,* 93 Miss. 566.

The court erred in permitting the witnesses for the contestants, Mrs. Charley Clausell (Rec. 99) and T. D. Duncan (Rec. 119) to testify that, in their opinion, Mrs. Leslie was under the influence of the Scallys. It is competent for non-expert witnesses to give their opinions as to the sanity of the testatrix, after having given the facts, circumstances, and incidents upon which they base their opinions; but it was clearly incompetent to permit these two witnesses to give it as their opinion that Mrs. Leslie was under the influence of the Scallys. 11 R. C. L., 604; *Compher* v. *Browning,* 109 Am. St. Rep. 346, at the top of page 356 (Ill.); *In re Goldthrop,* 58 Am. St. Rep. 405, par. 5 (La.); *Kerr* v. *Lunsford,* 2 L. R. A. 668 (W. Va.).

This evidence is clearly incompetent, and having been given by one who had lived in the same house with Mrs. Leslie, and another who had known her for a long time, and who was supposed to have been her friend, it un-

doubtedly had its weight with the jury. It cannot be said that this error was not material, and especially in view of the fact that so much other incompetent and irrelevant evidence was permitted to go to the jury over the objections of the proponents; and, if for no other reason than this, the case should be reversed.

*W. C. Sweat* and *W. J. Lamb,* for appellees.

The first grounds set up by the appellees for setting aside the will was that Mrs. Leslie at the time she executed the will, was mentally incapacitated to make the will. One of the main assignments of the appellants is that the court erred in refusing to grant a peremptory instruction to the jury to find for the proponents on the issue of insanity.

In the first place, even though proponents had been entitled to the instruction, if it had been properly drawn by appellants, the court could not give it drawn as it was. The instruction is as follows: "The court charges the jury that they must find in favor of the proponents on the issue of the testamentary capacity of Mrs. Catherine Leslie, and that at the time of the execution of said will, on the 15th day of October, 1919, Mrs. Leslie was of sound and disposing mind and competent to make a will."

If the court had given this instruction, the jury would have been charged that Mrs. Leslie was of sound and disposing mind on the 15th day of October, 1919, when the record shows that the will in question was executed on the 15th day of October, 1917. All of the testimony which was before the jury, without contradiction, and the will itself, show that the will was executed on the 15th day of October, 1917. This court cannot say on what ground the court below refused the foregoing instruction. It may be that it was refused on the ground that the date of the execution of the will as set out in the instruction missed the correct date by nearly two years, and the court below certainly had a right to refuse the instruction on this ground, if on no other.

In the next place, the court properly refused the instruction and submitted the issue of testamentary capacity to the jury for the reason that there was sufficient testimony to go to the jury on the question of the mental incapacity of Mrs. Leslie at the time of the execution of the will, and if the court had granted this instruction it would have clearly committed error in so doing in the light of the testimony as to the mental incapacity of Mrs. Leslie.

One of the best evidences of the condition of a person's mind is the product of the mind, or that which comes from it. One of the best evidences of the mental incapacity of the testatrix in this case is the product of her mind, towit, the will which she wrote. *Jamison* v. *Jamison,* 96 Miss. 299-300; Redfield on Wills, 516; *Boyse* v. *Rossborough,* 6 H. L. Cas. 1.

In 28 Am. & Eng. Enc., page 70, the text says: "The testator's condition may fall short of that degree of mental aberration generally known as insanity or idiocy, and yet be such as to incapacitate him in law for the execution of a valid will." *Manatt* v. *Scott,* 106 Iowa, 203, 68 Am. St. Rep., 293; *Burney* v. *Torry,* 100 Ala. 157, 45 Am. St. Rep. 38.

Counsel for appellants relies largely upon the case of *Lunn* v. *Lash,* 93 Miss. 81, 46 So. 550, insisting that this case is authority for the contention that the peremptory instruction on the issue of insanity should have been given. The court says in that case: "The fact that he gave property to one who had been a faithful servant for thirty years is to us no sort of indication of unsound mind, particularly when we consider that he seems to have had no relation on earth, because he did not believe that the child of his divorced wife owed its paternity to him."

We say the court was right. He had no relatives on earth. The child of his divorced wife, according to his conception, was not his child, and why should the fact that he gave his property to a faithful servant of thirty years instead of to a child of his divorced wife that he regarded

as not his own, indicate insanity?  Such was not at all unnatural or unreasonable.

The case of *Jamison* v. *Jamison,* 96 Miss., was decided since the Lash case, was and is a case in which the father had cut out one of his children and gave his property to his wife and other children.  The court, in effect, said that it was an unnatural and unreasonable will, and called for an explanation on the part of those benefited.

The facts and circumstances shown by the record, together with the facts that the will cut out all of her relatives, is abundantly sufficient to go to the jury on the question of mental incapacity, and especially is this so when it is shown that the relations of Mrs. Leslie with her family and relatives were the most pleasant.

This court has spoken in no uncertain terms on this point, as to whether or not the apparent injustice and unreasonableness of the will should be submitted to the jury along with other indications of insanity.  *Jamison* v. *Jamison,* 96 Miss. 299; 40 Cyc. 1029; *Chene* v. *Goldy,* 225 Iowa, 394, 80 N. E. 289, 116 Am. St. Rep. 145.

The appellee's contention in this case is that the will in question is shown to be unjust, unfair and unreasonable, and it may be true that as a strict legal proposition that Mrs. Leslie did not owe her people anything and that she was not required under the law to give them anything, but we use the terms unfair, unjust and unreasonable in the commonly accepted sense; in the sense of what is expected of persons under normal conditions and in the natural course of events, and what the absolutely normal person would do.  We insist that the natural and normal thing to have done and which would have been done by Mrs. Leslie under normal conditions, and that would have been expected of her had she had a normal and healthy mind would have been to have distributed her property to her blood relatives.  40 Cyc. 1032; *Snell* v. *Weldon,* 243 Ill. 496, 90 N. E. 1061.

As to whether or not Mrs. Leslie was competent mentally to make a will, is a question entirely for the jury to

determine, and we submit to the court that there was ample proof in this record for the trial court to submit this question to the jury. This court has spoken in no uncertain terms as to the province of the jury in such matters. *Railroad Company* v. *Cantrell*, 70 Miss. 331; *King et al.* v. *Rowan et al.*, 82 Miss. 1, 34 So. 328; *R. R. Co.* v. *Cantrell*, 70 Miss. 329, 12 So. 344; *Jamison* v. *Jamison*, 96 Miss. 300; *Woodville et al.* v. *Pazzati*, 81 So. 132.

The appellants insist that inasmuch as the testimony of the attesting witnesses shows that, at the time the will was executed by Mrs. Leslie, in their opinion she was of sound mind and had testamentary capacity, and that inasmuch as the contestants offered no testimony at all to show mental incapacity of the testatrix on that date, that this, in itself, entitled the appellants to a peremptory instruction on the issue of testamentary capacity.

This court has again disagreed with opposing counsel as to the law of the case. *King* v. *Rowan*, 82 Miss. 13; *Crandell's Appeal*, 63 Conn. at page 368, 28 Atl. 531, 38 Am. St. Rep. 375. This court has decided without dissent, that the burden of proof on the question of mental capacity and undue influence is on the proponents of the will, and the burden is on the proponents throughout the entire trial. The burden is not on the contestants to show mental incapacity or want of undue influence, but on the contrary, the burden is on the proponents to show that the deceased had mental capacity and was not unduly influenced. Where there is any testimony at all of any probative value, it is the duty of the court to submit the question to the jury. *Sheehan* v. *Kearney*, 82 Miss. 701; *Brown* v. *Walker*, 11 So. 724.

We respectfully submit to the court that under the facts as shown by the record in this case and the authorities cited above there was no error committed by the court in refusing to give the charge asked by the appellants. The second assignment of error assigned by the appellants is to the action of the court in refusing to grant the general peremptory charge marked A which was requested by ap-

pellants.   Opposing counsel say that: "In view of the fact
that this assignment of error covers both the question of
withdrawing from the consideration of the jury the issue
of testamentary capacity, as well as the issue of undue in-
fluence, we shall confine our discussion under this assign-
ment solely to the question of undue influence."

We will present the matter to the court in the same
order in which counsel for appellants present the matter,
and we will now argue to the court our contention of the
law and facts shown by the record on the issue of undue
influence.

We contend that this issue was not only properly sub-
mitted to the jury, but we go further and contend that if
the question of undue influence was not properly sub-
mitted to the jury in this case, it is practically impossible
to make out a case of undue influence sufficient to go to
the jury.   *Meier* v. *Buchter,* 187 Mo. 68, 94 S. W. 833, 6
L. R. A. (N. S.) 202.

If it was the law that a will should not be set aside on
the ground of undue influence, except in the case of direct
and positive proof of such influence, it would be a great
protection to those who use undue influence, to obtain
control of testators, and justice would oftentimes fail by
reason of such a rule.   However, such is not the law, and
all that the law requires to set aside a will on the ground
of undue influence, is to prove facts and circumstances
from which the jury may reasonably infer that undue in-
fluence was used.   This court has announced what the
law is on this subject.   *Jamison* v. *Jamison, supra; Black-
well* v. *Edsall,* 17 Colo. 429, 69 Pac. 792; *Meier* v. *Buchter,*
197 Mo. 68, 94 S. W. 833, 6 L. R. A. (N. S.) 202; *Powell*
v. *Plant,* 23 So. 400; Pom. Eq. Jur. 981; 27 Am. & Eng.
Enc. Law, p. 452, et seq; *In re Hess Will* (Minn.), 31 Am.
——.

Counsel for appellants insist that the will in this case
is not unreasonable, unnatural or unjust.   In the case of
*Hitt* v. *Terry,* 92 Miss. 971, Terry had no wife, children
or descendants of children.   His only relatives, and the

circumstances in that case were strongly similar to the circumstances in the case at bar. The courts said in that case: "The jury had a right to determine the unnaturalness or unreasonableness of the will from the provisions looked at in the light of the testimony in the case not from the provisions alone. *Hitt* v. *Terry*, 92 Miss. 706.

Counsel for appellants, insist that the declarations made by Mrs. Leslie are only suspicious circumstances. The very fact that there are so many suspicious circumstances is one of the strongest indications that the position of the contestants in this case is right. *Sheehan* v. *Kearney*, 82 Miss. 688.

We think we are justified in saying in this case the same as this court said in the case of *Woodville et al.* v. *Pizzati*, 81 So. 132: "The jury has resolved the sharp issue of fact in favor of the contestants, and we have no right to say on the present record that justice has not been done." *Burnett* v. *Smith*, 93 Miss. 566.

In the case of *Bennett* v. *Bennett*, 26 Atl. 573, the court said: "Undue influence is the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised."

If the influence caused the testator to do what he would not otherwise have done, it is undue. It does not have to go to the extent of completely substituting another's will for that of the testator. We submit to the court that appellants certainly got all in the way of instructions that they could ask, and have no ground here to complain.

Beginning with the first assignment of error on the part of the appellants, they complain at the charges given for the appellees, and before we argue them *seriatim*, as presented in the argument of the appellants, we think we are entitled to invoke the doctrine of this court announced in the case of *Hitt* v. *Terry*, 92 Miss. 708.

If Mrs. Leslie was mentally incapable of making a will, then there could be no undue influence. The mere fact of

her being mentally capable of making a will is the only reason why she could be unduly influenced, and if she was mentally capable and was unduly influenced to make the will she certainly knew what the will contained; so according to Alex. on Wills, this criticism is without merit.

In Alex. on Wills,. page 880, 582, he says: "In fact in a legal sense undue influence can be exercised only on those possessing testamentary capacity, for if such capacity be lacking the testator cannot make a valid will."

The next argument of appellants contends that instruction No. 5 given for the contestants was error. This charge simply tells the jury that a will that is partial and unjust, unreasonable and unnatural in its provisions, under the law is looked on with suspicion, and that the jury should take these facts into consideration in determining whether or not Mrs. Leslie was unduly influenced to make the will, if they believed such facts to exist. This principle of law is sustained by all text writers and decisions of courts of last resort. *King* v. *Rowan*, 82 Miss. 16; *Hitt* v. *Terry*, 92 Miss. 671; 2 Alex. on Wills, p. 84, sec. 586; 1 Alex. on Wills, p. 481, sec. 365. We think it is applicable here to quote what this court said in *Hitt* v. *Terry*, 92 Miss. 708.

It will not do to pick out, with the pincers of a sharp and keen criticism, minor errors and omissions here and there in instructions and hold them up in bold relief, and, shutting our eyes to all else, look at those defects, and so determine whether a case should be reversed or not.

The next argument presented by counsel for appellants under this assignment of error is the giving of charges 7 and 8 for the contestants wherein the jury are told that if they believe from the evidence that the Scallys occupied a confidential relation to Mrs. Leslie and that she willed to them the greater part of her estate, then the law presumes and this presumption is evidence that she was unduly influenced by the Scallys.

In the case of *Hitt* v. *Terry*, 92 Miss. 707, you will find this charge given by the court and sustained, and counsel

in that case made the same criticism, that counsel is making in this case, and the same analogy exists between the charges 7 and 8 given for the contestants in the case at bar, and charge No. 15, given for the proponents in the case at bar.

It will be seen by the above opinion that it is not necessary that this confidential relation be a legal confidential relation, for the court in its opinion, after enumerating what is generally termed legal confidential relations, uses the term and others. *Holt* v. *Agnew*, 67 Ala. 360; *Moore* v. *Spier*, 80 Ala. 129; *Coghill* v. *Kennedy*, 24 So. 468.

According to the authorities cited above, the term, confidential relations has a much broader meaning than that contended for by counsel for appellants, and extends to all those relations in life in which one person reposes confidence and trust in another. Whatever those relations may be whether it be that of physician and patient, principal and agent, client and attorney, or that which exists on account of close and intimate and personal relations, any relation in life in which one person has a right to expect on account of such relation that the other will deal justly and fairly with them. *Thomas* v. *Whitney*, 186 Ill. 225, 57 N. E. 808, 810; *Stall* v. *Stall*, 214 Ill. 131, 73 N. E. 319, 105 Am. St. Rep. 101.

To the same effect is the following cases: 29 Am. & Eng. Ency. of Law, 119; *Scattergood* v. *Kirk*, 192 Pa. 263, 43 Atl. 1030; *Dick* v. *Alvers*, 243 Ill. 231, 90 N. E. 683; *Hensan* v. *Cooksey*, 127 Am. St. Rep. 350. Applying the rule of law laid down in the authorities cited above, a confidential relation existed between Mrs. Leslie and the Scallys, or at least there was sufficient testimony of such relation, as to make it proper to submit the question to the jury, and to allow them to decide whether or not such relations did exist, and to charge the jury that if they found such a relation did exist, then a presumption of undue influence on the part of the Scallys arose. *Ormsby* v. *Webb* (U. S.), 33 L. Ed. 813; *Turner* v. *Cheeseman*, 15 N. J. Eq., 243, 265; *Moore's ex'rs.* v. *Blauvelt*, 15 N.

J. Eq., 367; *Lynch* v. *Clements,* 24 N. J. Eq. 431; *Burnett* v. *Smith,* 93 Miss. 566; *Hoffman* v. *Hoffman,* 192 Mass. 416, 78 N. E. 492; *Powell* v. *Plant,* 23 So. 400, 2 Pom. Eq. Jur. 951, 27 Am. & Eng. Enc. Law, 453, et seq.; *In re Hess Will* (Minn.), 31 Am. St. Rep. 670, 691, notes (S. C. 51 N. W. 6140).

Appellants next complain at charge No. 11, given for the contestants. This charge tells the jury that the law condemns as undue influence that influence obtained directly or indirectly, by cunning or ingenuity, or by threats, by persuasion or by any other means that the human mind may suggest to obtain influence and control over another provided such undue influence is obtained by such methods, or either of them. We refer the court to the same authorities cited in our argument just above to sustain charge No. 10, as the same authorities sustain the same proposition of law contained in charge No. 11.

Appellants next argue and complain at charge No. 17 given for the contestants, appellees. This charge does not state that the will is unnatural and unreasonable, as counsel contend but on the contrary it is expressly qualified by the clause: "If such they believe to exist." The same criticism is made of a similar instruction in the case of *Hitt* v. *Terry, supra,* and the court said that the criticism was hypercritical. The following authorities amply sustain this charge: *King* v. *Rowan,* 82 Miss. 16; *Hitt* v. *Terry,* 92 Miss. 671; 2 Alex. on Wills, p. 884, sec. 586; *Meier* v. *Buchter,* 7 Am. & Eng. Ann. Cas. 892; *Coghill* v. *Kennedy,* 24 So. 454; *Miller* v. *Whittington,* 80 So. 504; *Coghill* v. *Kennedy,* 119 Ala. 646, 24 So. 459.

Appellants next argue and complain at charge 21 given for the contestants. This charge tells the jury that it is not the means employed so much as the effect produced, which must be considered by the jury in determining whether undue influence caused Mrs. Leslie to make the will she did. This charge is sustained by all the textwriters and decisions of courts of last resort. *Coghill* v. *Kennedy,* 24 So. 464; *Leverett* v. *Carlyle,* 19 Ala. 80; *Coghill*

v. *Kennedy,* 24 So. 464; 2 Alex. on Wills, p. 871, sec. 576.

One of the best ways of determining undue influence is by the effect produced. To prove what means were employed is in many instances impossible. In this instance it is largely to be determined by the effect on the testator. The statement of law is correct and the instruction is approved in the case of *Prescott* v. *Johnston,* 91 Minn. 273, 97 N. W. 891.

This same principle of law is also approved by the following authorities: *Ormsby* v. *Webb* (U. S.), 33 L. Ed. 813; *In re Hess' Will,* 31 Am. St. Rep. 674; *Turner* v. *Chesseman,* 16 N. J. Eq. 243; *Lynch* v. *Clement,* 24 N. J. Eq. 431.

Appellants next assign as error the permitting the witnesses for the contestants, Mrs. Charlie Clausell and T. D. Duncan, to testify that Mrs. Leslie was under the influence of the Scallys. Both of these witnesses stated facts and circumstances showing that Mrs. Leslie was under the influence and control of the Scallys, and it was only after they had stated facts and circumstances on which they based their opinion that Mrs. Leslie was under the influence and control of the Scallys.

The authorities cited by opposing counsel can have no application to the case at bar, for in the authorities cited by counsel for appellants the witness undertook to say whose influence the testator was under without stating the facts and circumstances on which they based their opinion, or from which the jury could base an opinion.

In case of this kind, all of the authorities hold, without a single exception, that great latitude must be allowed to show the facts and circumstances under which undue influence is exerted, because all of the authorities, without an exception, further hold that such facts can rarely ever be proven, except by circumstances. *Jamison* v. *Jamison,* 96 Miss. 299; 13 Enc. of Evi. p. 227; *Howell* v. *Howell,* 59 Ga. 145; *In re Vivian's Appeal,* 74 Conn. 257, 50 Atl. 797; *Pattee* v. *Whitcomb,* 72 N. E. 249, 56 Atl. 459.

W. H. COOK, J., delivered the opinion of the court.

This suit presents a contest over the last will and testament of Mrs. Catherine Leslie, deceased.  Mrs. Leslie died at her home near Corinth, Miss., on the 15th day of January, 1918, at the age of seventy-four years, leaving a document purporting to be her last will, which had been executed by her on the 15th day of October, 1917.  In this will the deceased, after providing for the payment of her just debts, expressly stipulated that none of her relatives, nor any of the relatives of her deceased husband, except the one specifically mentioned, should take any of her property at her death; and, after making a specific bequest of five hundred dollars to the heirs of Col. E. S. Candler, her former legal adviser and friend, and a bequest of one thousand dollars to a niece of her deceased husband, she by description devised certain real estate to one Frank Scally, and certain other real estate to his brother, George Scally, and made the said George Scally the residuary legatee.  The deceased left surviving her as her heirs at law two brothers, a sister, and several nephews and nieces.

On January 17, 1918, the executor named in the will presented it for probate, and it was duly probated in common form in the chancery court of Alcorn county, and on June 7, 1918, all the collateral relatives, except one brother, joined in instituting this contest by filing a bill in equity, alleging, in substance, that at the time of the execution of the will Mrs. Leslie was weak, physically and mentally, and that she was not of sound and disposing mind, and that she was unduly influenced by some of the beneficiaries. under said will.  Defendants answered this bill, and an issue *devisavit vel non* was made up and submitted to a jury, resulting in a verdict in favor of the contestants, and from the decree entered on this verdict proponents appeal.

The testimony in this case is entirely too voluminous to undertake to set it out in detail, and we shall state

only such parts thereof as appear to be necessary to an understanding of the questions herein decided.

Mrs. Leslie and her husband accumulated a considerable estate, consisting in part of a large and valuable farm about four miles from Corinth. This farm was their homestead, and before the death of her husband she had assumed a large share in the management of their property. After the death of her husband she continued to reside on this farm, and successfully managed her property and business affairs, and so successful was her management that she had greatly increased the value of her estate before her death. She continued in the active management of her large estate until her death. The Scally family, who were beneficiaries under this will, owned adjoining lands, and lived as neighbors to Mrs. Leslie for many years, and the intimacy between the families was very close, but for the purposes of this decision it is unnecessary to detail the voluminous testimony in reference to the relation which existed between these families.

Altogether the deceased executed six wills. The first one was executed before the death of her husband, the second after the death of her husband and before the death of her only son. The record does not disclose the contents of these two wills, but shortly after the death of her son in the year 1909 she executed a third will, by which she devised to Col. Candler the sum of five hundred dollars for services, and to Mrs. Mary Elizabeth Johnson, a niece of her deceased husband, the sum of one thousand dollars, and to her collateral relatives the sum of five dollars each, and the remainder of her estate to Frank and George Scally.

About 1914 Mrs. Leslie executed a fourth will which was substantially the same as the 1909 will, except the five dollar bequests to relatives were omitted. About two years later she executed a fifth will, in which she added a bequest to a niece who at that time was living in the home with her. On October 15, 1917, the will involved in this contest was executed.

It appears from the evidence that on October 15, 1917, Mrs. Leslie came to Corinth and secured her will from her private box at the bank, and went to the office of her regularly retained attorney and instructed him to prepare another will, and directed the changes which she desired, and explained in detail her reasons for making these changes. The will involved here was then prepared, and she directed her attorney to call witnesses two business men whom she had known for many years, and this will was executed in the presence of her attorney and these witnesses, and was then delivered to her. After her death it was found among her private papers in the bank.

At the conclusion of the evidence introduced at the trial of the issues involved in this contest the proponents requested a peremptory instruction upon the question of testamentary capacity, and the first assignment of error challenges the correctness of the action of the court in refusing this instruction.

Upon the trial the proponents offered in evidence the will and the complete record of the proceedings probating the will and rested. Thereupon the contestants introduced a number of witnesses to meet the *prima-facie* case made by proponents. We have carefully and repeatedly examined this evidence, and upon the question of testamentary capacity at the time of the execution of the will it is fragmentary and of little, if any, probative value.

Only four witnesses testify upon this issue. Two of them stated, in substance, that in their opinion Mrs. Leslie was not of sound mind at times. The third testified that in his opinion her mind was not good at times, and the fourth that in his opinion her mind was flighty at times, what he would call unbalanced. Only two of these witnesses undertake to give any incident, fact, circumstance, or reason for this opinion, and the circumstances or incidents detailed are trivial; and, since these two witnesses expressly base their opinion upon these incidents, the value

of these opinions is weakened rather than strengthened. Two of these witnesses fix the time at which Mrs. Leslie came under their observation as being during the years 1914 and 1915—about two years prior to the execution of the will—and no witness undertakes to say that her mind was not sound at or near the date of the execution of the will.

The mental capacity of the testatrix is to be tested as of the date of the execution of the will. Alexander on Wills, vol. 1, p. 327; Schouler on Wills, vol. 1, p. 134; *Lum* v. *Lasch,* 93 Miss. 81, 46 So. 559; *Moore* v. *Parks,* 84 So. 230. If in fact there were periods of temporary or intermittent insanity or mental incapacity, this does not raise a presumption that it continued to the date of the execution of the will. *Lum* v. *Lasch,* 93 Miss. 81, 46 So. 559; Alexander on Wills, vol. 1, par. 333; *Chandler* v. *Barrett,* 21 La. Ann. 58, 99 Am. Dec. 706; *In re Murphy's Estate,* 43 Mont. 353, 116 Pac. 1004, Ann. Cas. 1912C, 380. All the circumstances surrounding the execution of this will indicate a perfectly sound mind at the date of the execution thereof, and we do not think there is any evidence offered by contestants which, if true, fairly tends to prove that the testatrix was of unsound mind when the will was executed.

It is urged on behalf of contestants that the unnaturalness and unreasonableness of the provisions of the will, being a proper question for the jury to pass upon, was sufficient to warrant submitting to the jury the question of testamentary capacity, and the case of *Jamison* v. *Jamison,* 96 Miss. 288, 51 So. 130, is cited in support of this contention. We do not understand this case to so hold. In the Jamison Case Chief Justice WHITFIELD said:

"Such a will, when there is other substantial evidence of undue influence and testamentary capacity, calls for explanation, and such unnatural provisions are submitted to the jury as evidence tending to show lack of testamentary capacity where that is in issue, and may be considered by the jury with all other facts and circumstances

in the case upon such issue; that is to say, an unnatural disposition of property, standing alone, may not avoid a will, but the results of such unhappy distribution may be tempered and toned down, possibly to avoidance, by allowing it to be weighed by the triers of fact, along with other facts tending to show undue influence or testamentary incapacity."

The unnaturalness or unreasonableness of a will is one of the elements which may be submitted to the jury upon the question of testamentary capacity, and should be considered by the jury, together with all the other facts and circumstances in evidence in the case, but when there is no other substantive evidence of testamentary incapacity, unreasonable or unnatural provisions of the will, standing alone, will not support a finding of testamentary incapacity. *King* v. *Rowan,* 82 Miss. 1, 34 So. 325. In the case of *King* v. *Rowan, supra,* the court says:

"It should be made clear to the jury that, however unreasonable and unnatural or unjust they may think the will is, they must uphold the will if, notwithstanding, they believe the testator had testamentary capacity, and was not unduly influenced."

The importance of the rule that harsh, unjust, unnatural, or unreasonable provisions of a will, standing alone, are insufficient to show testamentary incapacity, is strikingly illustrated in the instant case by the fact that, conceding the will in question to be harsh, unjust, and unnatural, the testatrix executed a will in 1909, at a time when the soundness of her mind was unquestioned, containing substantially the same provisions as the will here involved.

We conclude, therefore, that the peremptory charge requested by proponents, withdrawing from the consideration of the jury the question of testamentary capacity, should have been granted.

While the decision of this question of the correctness of the action of the court in refusing this peremptory charge is controlled by the evidence offered on behalf of

contestants and the necessary inference to be drawn therefrom, we might add that the testimony for proponents on this issue was made by more than forty witnesses, who testified that in their opinion the testatrix was of sound mind, and that she was a woman of splendid business ability. Included in this list of witnesses were the three men who were present when the will was executed, and also merchants, bankers, farmers, public officials, and citizens from almost every avocation and station in life, who had known Mrs. Leslie intimately for many years, and who testified that in their opinion she was of sound mind, and that she was a woman of unusual business ability. Some of these witnesses were adjoining landowners and close neighbors, who had known her intimately for many years. The physician who had served her family for more than twelve years, and who treated her shortly before the will was executed and also a few days thereafter, and who attended her in her last illness, testified positively that the testatrix was of sound mind; and in view of the overwhelming weight of this testimony we think any verdict which might be based upon testamentary incapacity should be set aside.

The second assignment of error is predicated upon the refusal of the court to grant the general peremptory charge requested by proponents. A discussion of the testimony offered upon the issue of undue influence would serve no useful purpose, and it is sufficient to say that, after a careful and painstaking examination of the record, we are of the opinion that there was sufficient evidence to warrant the submission of this issue to the jury, and that the action of the court in refusing the general peremptory charge was correct.

The third assignment challenges the correctness of the action of the court in refusing an instruction, numbered C in the record, which undertook to define when influence acquired by advice, argument, persuasion, solicitation, or entreaty may be characterized as undue influence. The

proper test is announced in *Burnett* v. *Smith*, 93 Miss. 566, 47 So. 117, where it is said:

"That influence exerted 'by means of advice, arguments, persuasions, solicitation, suggestion, or entreaty is not undue, unless it be so importunate and persistent, or otherwise so operate, as to subdue and subordinate the will and take away its free agency.' "

And we think the language of the refused instruction, which undertook to state this rule, was too strong, and that there was no error in its refusal.

The fourth assignment of error is predicated upon the action of the court in modifying an instruction, numbered 11, but the record does not disclose the modification complained of, and we only learn of the modification from the briefs of counsel, and this assignment will not be considered.

The next assignment is based upon certain instructions granted contestants, and we shall discuss instructions numbered 5, 10, 11, 17, and 21. Instruction No. 5 reads as follows:

"The court charges the jury that a will that is partial and unjust, unreasonable and unnatural, in its provisions under the law, is looked on with suspicion, and the jury should take these facts into consideration in determining whether or not Mrs. Leslie was unduly influenced to make said will, if such facts they believe to exist."

This instruction is erroneous. It assumes that the will is "partial and unjust, unreasonable and unnatural," and this vice in the instruction is not cured by the concluding words thereof. It tells the jury that they "should take these facts into consideration in determining whether or not Mrs. Leslie was unduly influenced," without any sort of qualification or limitation. As stated in *King* v. *Rowan,* *supra*:

"There doubtless are many cases in which the unnaturalness or unreasonableness of a will may, under proper qualifications, be accepted by the jury as one of the elements in determining the validity of the will as one hav-

ing been obtained by undue influence, or as having been made without testamentary capacity. But courts should always, in giving this principle in charge to a jury, be careful to scrupulously guard the principle, so as to inform the jury that the issue which they are to try is whether the testator had testamentary capacity; or whether, though having it, he had been unduly influenced; and not whether, in the opinion of the jury, the will was an unnatural or an unreasonable one."

Undoubtedly, if the jury believed from the evidence that the will is unjust, unreasonable, or unnatural, they may consider that fact in connection with all the other facts and circumstances in evidence in the case, but the instruction given in this case carried no such qualification or limitation.

The language of instructions numbered 10 and 11 is substantially the same, and both are subject to the same criticism. Instruction No. 10 is as follows:

"The court instructs the jury that the law condemns as undue influence that influence which one person exercises over another, whether it be obtained by flattery, cajolery, threats, persuasion, deception, or any other means which may be used to influence and control another person, and is sufficient to set aside a will, although neither force nor fear was used to get Mrs. Leslie to make said will."

As stated in *Burnett* v. *Smith, supra,* "Not every influence is undue, and undue influence cannot be predicated of any act unless free agency is destroyed," and each of these instructions omits this necessary qualification, and the use of the words "influence and control another person" does not meet the requirement or supply the deficiency.

The seventeenth instruction granted contestants is erroneous for the reason that it assumes as a fact that the will is unnatural and unreasonable.

Instruction No. 21 is in the following language:

"It is not the means employed so much as the effect produced, which must be considered by the jury in determining whether undue influence caused Mrs. Leslie to make the will she did; for the undue influence exerted over Mrs. Leslie, if any, might be regarded as innocent, yet, if in this case it resulted in unduly influencing Mrs. Leslie to make the will giving the greataer part of her property to the Scallys, then this influence was in law undue influence, and the jury must find against the will."

The language of this instruction is misleading and erroneous. While it is true that if undue influence exists, "it is not measured by the degree or extent, but by its effect, and if the influence exerted is sufficient to destroy free agency, it is undue, even if slight," but this instruction does not correctly announce this proposition, and in its present form it is calculated to confuse the minds of the jury, and to lead them to consider the provisions of the will alone as controlling upon the issue of undue influence.

There are numerous assignments of error based upon the admission of testimony for the contestants, but we do not think there is merit in any of them, except assignment No. 6, which is based upon the action of the court in permitting certain witnesses to testify that, in their opinion, Mrs. Leslie was under the influence of the Scallys. This testimony was inadmissible. The witnesses should be required to state the facts within their knowledge, and the jury left to draw its own conclusions from these facts, uninfluenced by the mere opinion of witnesses. In 11 R. C. L. 604, the rule, which we approve, is stated as follows:

"But opinions that the testator was under the influence and control of a certain person, or was especially susceptible to such influence, are rejected."

See, also, *Compher* v. *Browning*, 219 Ill. 429, 76 N. E. 678, 109 Am. St. Rep. 356; *In re Goldthorp*, 94 Iowa, 336, 62 N. W. 845, 58 Am. St. Rep. 405.

For the errors herein indicated, this cause is reversed and remanded.

*Reversed and remanded.*