# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01160-COA

| | |
|---|---|
| IN THE MATTER OF THE LAST WILL AND TESTAMENT OF E. MILTON BURRIS SR., DECEASED:  E. MILTON BURRIS JR. | APPELLANT |

v.

| | |
|---|---|
| THE ESTATE OF E. MILTON BURRIS SR., DECEASED, BY AND THROUGH THE EXECUTRIX RENEE SIMS BURRIS, AND RENEE SIMS BURRIS, INDIVIDUALLY | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 07/07/2017 |
| TRIAL JUDGE: | HON. DEBBRA K. HALFORD |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARC E. BRAND |
| ATTORNEY FOR APPELLEES: | EDWIN L. BEAN JR. |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 09/25/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     E. Milton Burris Jr. (Milt) appeals from the judgment of the Amite County Chancery Court granting summary judgment in favor of Renee Sims Burris on the issues of testamentary capacity and undue influence in the contest of the last will and testament of E. Milton Burris Sr. (Eddie) by his son, Milt.  Milt argues that the chancery court erred in granting summary judgment because, in doing so, the chancellor adjudicated facts rather than allowing them to be determined by a jury.

¶2.     We find that based on the averments of Renee's motion for summary judgment and

Milt's response thereto, the chancellor did not err in granting summary judgment. Therefore, we affirm.

## FACTS

¶3. On February 20, 2012, Eddie executed his Last Will and Testament. Eddie left his entire estate to Renee, his wife and the executrix of his estate, with the exception of a one-dollar bequest that he left to his only child, Milt. Eddie subsequently passed away on February 6, 2015, after a battle with a terminal illness. After Eddie's death, Renee filed a petition to probate the will on February 25, 2015, and an amended petition two days later. The chancery court granted Renee's amended petition on February 27, 2015.

¶4. On November 16, 2016, Milt filed a complaint contesting the validity of the will. On November 18, 2016, Renee filed her answer, counterclaim, and motion for sanctions. On December 12, 2016, the case was set for trial in August 2017, with the discovery period ending in March 2017.

¶5. On August 12, 2016, Renee had moved for partial summary judgment. The motion for partial summary judgment was scheduled to be heard on May 4, 2017, but it was rescheduled because Milt was allowed to file an amended complaint. The parties agreed that the court would consider the allegations of the amended complaint whenever it ruled on the motion for partial summary judgment. On July 7, 2017, the court granted Renee's motion for summary judgment, finding that there was no genuine issue as to any material fact regarding Eddie's testamentary capacity, nor was there a genuine issue of material fact on

the issue of undue influence on the part of Renee. Milt timely appealed.

DISCUSSION

¶6.    "As an appellate court, we will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, or an erroneous legal standard was applied." *In re Estate of McDevitt*, 755 So. 2d 1125, 1127 (¶10) (Miss. Ct. App. 1999). "In reviewing assignments of errors of law, this Court proceeds de novo." *Id*. at (¶14). In its order, the chancery court cited *Power v. Scott*, 837 So. 2d 202, 205 (¶7) (Miss. Ct. App. 2002), and *Gallagher v. Warden* (*In re Will & Testament of Launius*), 507 So. 2d 27 (Miss. 1987).

¶7.    The Mississippi Supreme Court in *In re Launius*, 507 So. 2d at 29-30, explained the burden of the contestant of a will facing a motion for summary judgment as follows:

> Appellees, as proponents of the will, have the burden of proving the will throughout. They meet this burden by showing the will was duly executed and admitted to probate. When the will is admitted to probate, proponents put on prima facie evidence that the testator had testamentary capacity and further that no undue influence was placed upon him. The burden of going forward then shifts to contestant, who must overcome the presumption raised by proponents that testator had testamentary capacity, (and, therefore, that the testator's execution of the will was a free and voluntary act).
>
> When the Mississippi Rules of Civil Procedure come into play within a situation involving a contest to [a] will, where movants for summary judgment (appellees) have shown there is no genuine issue of material fact vis-a-vis probate of the will, contestant, as the adverse party, may not rest upon the mere allegations of denials of his pleadings, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. M.R.C.P. 56(e).

(Citations and internal quotation marks omitted).

¶8.     With this in mind, Milt argues that there existed genuine issues of material fact as to his father's testamentary capacity and the presence of undue influence by Renee to defeat the summary judgment motion and continue the case to trial.

*A.     Testamentary Capacity*

¶9.     Milt contends that the chancellor erred by weighing the evidence presented instead of simply identifying conflicting evidence that creates a genuine issue of material fact. "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. It is not our duty to weigh the competing evidence; it is our duty to determine if there is conflicting evidence for trial." *Laurel Yamaha Inc. v. Freeman*, 956 So. 2d 897, 906 (¶36) (Miss. 2007). In *In re Last Will & Testament & Estate of Smith*, 722 So. 2d 606, 610 (¶12) (Miss. 1998), the Mississippi Supreme Court addressed testamentary capacity:

> A determination of testamentary capacity is based on three factors: 1. Did the testatrix have the ability at the time of the will to understand and appreciate the effects of her act? 2. Did the testatrix have the ability at the time of the will to understand the natural objects or persons to receive her bounty and their relation to her? 3. Was the testatrix capable of determining at the time of the will what disposition she desired to make of her property?

"The key to testamentary capacity is mental competency *at the time the will is made*." *Lee v. Lee*, 337 So. 2d 713, 715 (Miss. 1976) (*citing Scally v. Wardlaw*, 123 Miss. 857, 86 So. 625 (1920) (emphasis added)).

¶10.    According to Milt, in July of 2011, Eddie was diagnosed with Non-Hodgkins Lymphoma. Despite attempts to treat it, his condition continued to deteriorate. In addition

to the lymphoma, Eddie had a number of other serious medical ailments. As a result, he regularly took opioids and anti-anxiety medications. Milt alleges that Eddie self-medicated using those prescribed medications and alcohol, which affected his mental capacity, causing him to make errors while working at his business. He states that Eddie's personal lawyer and friend, John Ott, had misgivings about his proposed disposition of his estate, as he expressed concerns about him leaving the estate to Renee—excluding Milt and Milt's daughter. Milt argues that the chancellor weighed the evidence and discounted his assessments in favor of medical records and other witnesses' affidavits.

¶11. Renee responds that at the time Eddie executed his will, he intended to leave Milt none of his estate.[1] According to Renee, Milt's assertions are self-serving and not supported by any documents or the sworn testimony of any person. Renee points out that—consistent with the chancellor's findings—a reading of the record reveals that no physician or medical provider made comments in Eddie's medical records that he had any mental issues or lacked the capacity to conduct his business.

¶12. Contrary to Milt's bare assertions, Renee provided affidavits and medical records to support her contention that the will was validly executed. Ott and Kathy Wright, one of Ott's employees, gave affidavits wherein each of them stated that Eddie was competent to execute

---

[1] Approximately two months prior to Eddie executing his will, he and Milt, who had been working with Eddie in Eddie's glass-installation business, had a major falling out, resulting in Eddie firing Milt. Even prior to Milt being terminated from his father's business, he and his father were not on good terms.

the will on February 20, 2012. Ott stated the following in his affidavit:

> I knew that he and his son, Milt, were estranged and had an acrimonious relationship. However, I urged him to think about his only grandchild, Milt's daughter. Perhaps leaving her something of significance should be considered. However, he was certain that he only wanted to leave Milt $1.00 and Renee everything else. He was of sound mind at the time he executed his Last Will and Testament which was witnessed by myself and my legal assistant, Kathy Wright, on the date in question.
>
> Over the next [twelve] to [fifteen] months I saw him several times and reminded him that he could change the will if he wished. He did not. He was concerned that Milt would contest the will, so I advised him to counsel with another attorney and get that attorney to draft a second will, even if it was identical to the one executed on February 20, 2012.

To that end, on or about May 24, 2013, Eddie hired another attorney, Stewart Robison, to give him a second opinion regarding the will that had been prepared by Ott. Robison signed an affidavit in which he attached an email correspondence between himself and Ott about his meeting with Eddie. The email stated, in pertinent part:

> [Eddie] expressed concerns over Milt's right to contest his will. I know of nothing in the law that provides a child the right to contest a will other than the usual undue influence and lack of testamentary capacity issues, *neither of which appear to be an issue here*. The will you drafted is quite simple, mentions Milt, . . . and in view of leaving his estate to his wife, which is a logical testamentary disposition of his property, I would be very surprised if any lawyer would view the will you drafted as anything other than valid in all respects.

(Emphasis added).

¶13.  In the decree admitting the will to probate, the court found that Eddie was of sound and disposing mind and memory at the time he executed the will. As stated, the relevant time period for determining testamentary capacity is mental competency at the time a will is made.

6

*Lee*, 337 So. 2d at 715. Milt produced no evidence that his relationship with his father was no longer estranged, nor did he present any evidence that on February 20, 2012, the day Eddie created his will, he had any knowledge of Eddie's mental state. Milt's assertions are not supported by the record and the chancellor did not err in granting the motion for summary judgment on this basis. "[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56.

    *B.    Undue Influence*

¶14.    The question here is whether Milt produced facts that are some evidence of Renee's undue influence in the formation of the will. "A presumption of undue influence arises in a will contest when a beneficiary occupies a confidential relationship with the testator and there is active participation by the beneficiary in either procuring the will or in preparing the will." *Smith*, 722 So. 2d at 611 (¶18). There is no question, nor is it disputed, that Renee and Eddie shared a confidential relationship by way of their marriage; however, that fact does not raise the presumption of undue influence.[2] Here, Milt argues that Eddie's cognitive

_____

[2]    It is undoubtedly true that a husband or a wife may exercise undue influence upon the other spouse, but the mere fact that there is a close relationship between the parties in a marriage does not mean that one's influence upon another is undue influence. The influence which a loyal wife, by her virtues, kindnesses and devotion, gains over her husband's affection and conduct, whereby a husband is caused to make a will in her favor, is no ground for refusing to admit the will to probate.

*Genna v. Harrington*, 254 So. 2d 525, 528-29 (Miss. 1971).

impairments, as well as Renee's actions in allegedly separating Eddie from his only child, amount to undue influence. He contends that Eddie's firing him on Christmas Eve in 2011 at Renee's bequest is evidence of undue influence exerted by Renee and indicates a lack of cognitive capacity by Eddie. In support of this assertion, Milt points to two things that Eddie did: married Renee after the passage of only eighteen days and executed the will after the passage of only twenty-seven days. Additionally, he argues that Renee did not affirmatively represent that she did not ask Eddie to provide for her in his will, either prior to or after they married.

¶15. Renee asserts that Milt produced no evidence that she was present during any of Ott's discussions of the will prior to, during, or after its execution. He also produced no evidence that she was present when Eddie sought additional advice from Robinson roughly fifteen months later. Furthermore, Renee contends that Milt produced no evidence that she arranged Eddie's appointments with the attorneys or paid for their services in the procurement of his will. In contrast, Renee submits that she produced affidavits from witnesses and documents detailing: the estranged relationship Milt had with his father; Eddie's capacity to make the will, including his wish to exclude Milt; observations of his strong-willed personality in general and during the relevant time period; a doctor's observations of Eddie's testamentary capacity to make decisions; and evidence that Eddie understood the nature of the disposition of his estate. Additionally, Renee, in her affidavit, disputed any claims that she influenced Eddie's decision.

¶16. The record supports Renee's assessment of the proceedings in the chancery court. While Milt is correct in his assertion that it is improper for a chancellor in a will contest to adjudicate facts unless the parties have agreed to dispense with a jury, he fails to fully appreciate that there must be genuine issues of material facts to be determined by a jury and that after Renee moved for summary judgment, with supporting affidavits, showing no genuine issue of material fact on the issues of testamentary capacity and undue influence, he could not rest on his general allegations and suppositions regarding his father's relationship with Renee and his father's mental health. He, as the contestant of Eddie's will, was required to bring forth an affidavit or affidavits demonstrating "sufficient evidence to establish the essential elements of [his] case on which [he] would bear the burden of proof at trial." *Karpinsky v. American Nat. Ins. Co.*, 109 So. 3d 84, 90 (¶17) (Miss. 2013). Our perusal of the record indicates that he did not come close to meeting his burden.

¶17. Milt offered no evidence to substantiate his claims at the trial level and does not do so here. The will was created three years prior to Eddie's death, and there is no indication in the record that he lacked the testamentary capacity to create it or that he suffered undue influence from Renee. We hold that the chancellor's findings on this issue are supported by substantial evidence. Therefore, the judgment of the Chancery Court of Amite County is **AFFIRMED**.

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. FAIR AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**